IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAY CULLIN,

        Plaintiff,

vs.

                                                    Civ. No. 04-1335 MV/LFG

JOHN W. SKINNER, in his individual
capacity, and VAPATEL, INC. d/b/a
HOWARD JOHNSON EXPRESS,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on John W. Skinner's Motion for Summary Judgment, filed September 30, 2005 **[Doc. No. 36]**. The Court, having considered the motion, briefs, relevant law, and being otherwise fully informed, finds that Defendant Skinner's motion is not well taken and will be denied.

**FACTUAL BACKGROUND**

For two to three weeks in April 2003, Ray Cullin ("Plaintiff") lived at the Howard Johnson Express Hotel in Albuquerque, New Mexico, paying rent on a weekly basis.[1] Plaintiff chose that hotel because of its close proximity to his place of employment, and he had moved all of his personal belongings into his hotel room, including a personal computer, all of his clothes, a briefcase, toiletries, and other items.

The hotel had run a newspaper advertisement for a weekly rental rate of $110. Initially, the hotel had charged Plaintiff this $110 rate, but in subsequent weeks charged him $155. When Plaintiff protested, hotel clerks offered various reasons for their refusal to honor the advertised

---

[1] On Defendant's Motion for Summary Judgment, the facts must be taken in the light most favorable to Plaintiff. Accordingly, in the recitation of the facts, the Court will describe the facts as supported by the Plaintiff's evidence. The Court notes significant disputes.

rate, and told Plaintiff to speak to the manager. The manager was unavailable to speak with Plaintiff, and on April 15, 2003, Plaintiff wrote a letter of complaint to Howard Johnson's corporate headquarters.

On April 21, 2003 at around 5 p.m., Plaintiff went to the front desk to pay his weekly rent as he had done in previous weeks. The clerk informed Plaintiff that he would be again charged a rate higher than the one advertised in the newspaper. Plaintiff protested and the clerk told Plaintiff to speak with the manager. Plaintiff ultimately agreed to pay the higher rate because all of his personal belongings were in his hotel room and he had no means of transportation, and therefore he could not readily move to another hotel. Plaintiff testified that he did not threaten the clerk or raise his voice during their interaction, recognizing that the clerk did not have the authority to lower his weekly rate. After paying his rent Plaintiff left the desk and returned to his hotel room, intending to resolve the matter with the hotel owner at another time.

When Defendant was gone from the front desk, the clerk telephoned the hotel owner and reported the interaction. The owner instructed the clerk to refund Plaintiff's money have him leave the hotel. The clerk then telephoned John Skinner ("Defendant"), an Albuquerque Police Department officer who, at that time, was a resident of the hotel. Pursuant to an agreement with the hotel owner, Defendant lived at the hotel rent-free in exchange for his "presence" as a police officer. The clerk told Defendant that Plaintiff had been to the desk numerous times and caused a disturbance over his rate, which other hotel guests had witnessed.[2] The clerk told Defendant that the owner wanted Plaintiff out of the hotel, and the hotel would reimburse his money.

---

[2] Plaintiff objects to the characterization of his interaction with the hotel clerk as a "disturbance" and denies that there had been more than one such interaction. Defendant stated that, according to hotel staff, Plaintiff had caused problems at the front desk on three different occasions.

2

Defendant went to Plaintiff's room. He did not have a key and he pounded on the door.[3] At that moment, Plaintiff was on the toilet and he believed, because of the urgency of the pounding, that someone had come to alert him about an emergency in the hotel. He immediately went to the door and asked, "Who's there?" through the closed door. Defendant replied, "Albuquerque Police Department."

Plaintiff contends that, because he had gone to the door wearing only in his underclothes, he opened door only a few inches in order to peer out. Defendant then immediately pushed open the door all the way, such that Plaintiff had to move out of the way to avoid getting hit by it.[4] Defendant entered the room and stood with his back against the door to prevent Plaintiff from closing it.[5] Once in the room, Plaintiff asked why Defendant was there. Defendant said that Plaintiff had to pack his belongings and leave the hotel.[6] Plaintiff asked Defendant for identification. Plaintiff claims that Defendant initially refused to show identification, eventually showed Plaintiff some sort of badge, but flashed it too quickly for Plaintiff to read.

Plaintiff told Defendant that he had been on the toilet and needed to finish using the bathroom. Defendant reluctantly allowed Plaintiff to return to the bathroom, and ordered him keep the door open so that Defendant could see Plaintiff in the bathroom from where he stood in

---

[3] Defendant states that he knocked on the door.

[4] Exactly how Defendant entered Plaintiff's room is in dispute. Defendant acknowledges that Plaintiff did not explicitly invite him to enter and states that he walked into the room after Plaintiff opened the door.

[5] Defendant claims that he was merely propping open the door.

[6] The parties dispute what Defendant was wearing when he entered the room. Plaintiff claims that Defendant was dressed in shorts, a tee shirt, and had fanny-pack around his waist, which made it difficult for Plaintiff to immediately identify Defendant as a police officer. Defendant claims that he was in his uniform.

3

the room's entryway. Plaintiff claims that, while on the toilet, he was exposed to any people who might walk by in the hallway outside the room.[7]

When Plaintiff came out of the bathroom, Defendant said Plaintiff had to leave the hotel because he had caused a disturbance at the front desk, and the hotel would refund Plaintiff's money. Plaintiff told Defendant that the problem was the hotel had refused to honor its advertised rate and therefore the rate the hotel was charging him was fraudulent. Defendant responded by saying that Plaintiff's willingness to pay a rate that he disputed did not make any sense and if Plaintiff wanted to stand his ground and stay at the hotel, Defendant would take him to the Bernalillo County Detention Center. Plaintiff alleges that at some point during the encounter, he asked Defendant about his employment as a police officer because he was concerned that Defendant was merely pretending to be an officer. Defendant answered in threatening manner that, if necessary, he could call for three more police officers to convince Plaintiff that he was, in fact, an actual officer.[8]

During the encounter, Plaintiff protested Defendant's orders to leave, telling Defendant that: Defendant had no right to throw him out of his room; Plaintiff believed that the hotel's refusal to charge him the advertised rate was illegal; Defendant's actions were retaliation for Plaintiff's complaint to corporate headquarters; and Plaintiff intended to file a civil complaint as a

---

[7] This fact is in dispute. Defendant testified that he does not recall Plaintiff using the toilet, and regardless, Defendant denies that Plaintiff was exposed to Defendant, or to anyone else, while in the bathroom, contending that the lay out of the room, as drawn in a rough diagram by Plaintiff, would preclude such exposure.

[8] Defendant contends that he did not know what payment arrangement Plaintiff had with the hotel or how long Plaintiff had been staying there, but in any case, their conversation about the rate and Defendant's comments about bringing in three additional police officers occurred after Plaintiff had begun to comply with Defendant's orders to pack his belongings and therefore are immaterial.

4

result of Defendant Skinner's actions. Defendant answered that it was not the time to argue, he was not the person to argue with, and Defendant again ordered Plaintiff to pack up and leave.

Defendant stayed in the room standing watch while Plaintiff packed his belongings and telephoned his ex-wife to ask for a ride. When Plaintiff finished packing, Defendant ordered him to load his belongings onto two luggage carts, which Defendant had brought up to the room by two or three hotel employees. Defendant then escorted Plaintiff out of the hotel, stopping by the front desk where the clerk refunded the money Plaintiff had paid earlier that day. Defendant then ordered Plaintiff to wait outside of the hotel until his ex-wife arrived to pick him up. The encounter between Plaintiff and Defendant lasted approximately one hour.

Plaintiff alleges that Defendant subjected him to an unlawful seizure and detention, and alleges that Defendant Skinner is liable pursuant to 42 U.S.C. § 1983 for the violation of his constitutional rights. Plaintiff's claims against the owners of the hotel have been settled **[Doc. No. 26]**. The remaining claims against Officer Skinner are: (I) Unlawful Seizure of Property, and (II) Unlawful Detention.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). There is no requirement that the moving party negate the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See Anderson*, 477 U.S. at 248. Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp. at 1281.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful.

*Saucier v. Katz*, 533 U.S. 194, 206 (2001).  When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test.  *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  The plaintiff must demonstrate that the defendant violated a constitutional or statutory right and that the right was clearly established at the time of the conduct.  *Id.*  The inquiry is more specific than whether the officer's conduct violated a constitutional right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted.  *Saucier*, 533 U.S. at 202. Furthermore, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  *Nelson*, 207 F.3d at 1206.

## DISCUSSION

In its Motion for Summary Judgment, Defendant asks this Court for an order determining as a matter of law that Defendant is entitled to summary judgment because (1) Plaintiff cannot establish that Defendant violated Plaintiff's constitutional rights, (2) Plaintiff did not have a property interest that was seized by Officer Skinner, and (3) because Plaintiff's encounter with Defendant was consensual under the Fourth Amendment.

**I.      Count I:  Unlawful Seizure of Property**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

7

The Supreme Court has recognized that the Fourth Amendment protects two types of expectations- searches and seizures: "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A seizure of property occurs where there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal citation omitted).

While the zone of privacy protected by the Fourth Amendment is most clearly defined "when bounded by the unambiguous physical dimensions of an individual's home," *Payton v. New York*, 445 U.S. 573, 589, the Supreme Court has stated that "[a] hotel room can clearly be the object of Fourth Amendment protection as much as a home or office." *Hoffa v. United States*, 385 U.S. 293, 301 (1966). *See also United States v. Croft* 429 F.3d 884, 887 (10th Cir. 1970). It is well settled that a hotel guest has a legitimate expectation of privacy within his hotel room, and is protected by the Fourth Amendment against unreasonable searches and seizures. *See Hoffa*, 385 U.S. at 301; *Stoner v. State of Cal.*, 376 U.S. 483, 490 (1964); *see also Croft*, 429 F.3d at 887.

Under Plaintiff's version of events, Defendant pushed his way into Plaintiff's room, issued orders under threat of arrest, and constrained Plaintiff's liberty to the extent that Plaintiff was permitted to use the toilet only under Defendant's watchful supervision. According to Plaintiff, he followed Defendant's orders to vacate the room only after voicing his disagreement with the hotel's and Defendant's actions, and only because Plaintiff feared arrest and even physical assault for noncompliance. For approximately one hour, Plaintiff packed his belongings under Defendant's constant supervision and threatening presence. Defendant escorted Plaintiff and his belongings out of the room and through the hotel lobby, dictating that Plaintiff was to stand outside while waiting for a ride. These facts are sufficient to establish a seizure within the

meaning of the Fourth Amendment because Defendant's actions caused a "meaningful interference" Plaintiff's "possessory interests in his property." *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992).

Defendant, however, contends that his actions did not constitute a seizure because, at the time of their encounter, Plaintiff had no property interest in the room. According to Defendant, Plaintiff's rental period, and corresponding property interest in the room, expired once the hotel decided remove Plaintiff from premises and refund Plaintiff's payment. It is true that a hotel guest's right to Fourth Amendment protection, however, is contingent on his or her right to private occupancy of the hotel room: "When the rental period has elapsed, the guest has completely lost his right to use the room and any privacy associated with it." *Croft*, 429 F.2d at 887. This is not a case where Plaintiff's rightful occupancy of the hotel room expired for nonpayment. *Cf. United States v. Lee*, 700 F.2d 424, 425 (10th Cir. 1983); *United States v. Croft*, 429 F.2d 884, 887 (10th Cir. 1970). Shortly before the encounter at issue, Plaintiff had gone to the front desk to pay for a second or third week-long term of residency at the hotel. The hotel clerk accepted this payment and thus renewed Plaintiff's right to occupy the hotel room. It is true that, after Plaintiff left the front desk, the hotel unilaterally decided to terminate its contract with Plaintiff and evict him. However, the hotel had not communicated this decision directly to Plaintiff nor refunded his money by the time Defendant arrived at the door of Plaintiff's room. Therefore, Plaintiff continued to have a property interest in the room.[9]

---

[9] Even if the hotel had given Plaintiff notice of his eviction and had refunded his money prior to Defendant's arrival at Plaintiff's door, it is likely that Plaintiff nonetheless would have retained a legal property interest in the room. The hotel could properly terminate Plaintiff's residency at the hotel and recover possession of Plaintiff's room only after following procedures set forth in New Mexico statutes. *See* NMSA 1978 §§ 47-8-37(A), 41 (1975). The hotel failed to follow these procedures. If the hotel lacked the authority to evict Plaintiff without proper legal process, then Defendant, an agent acting on the hotel's behalf, would not be authorized to do so.

A hotel guest's disorderly behavior may justify termination of his or her rental period, and possibly arrest, if the guest refuses to leave the premises when asked. *See United States v. Rambo,* 789 F.2d 1289 (8th Cir. 1986). Nevertheless, under Plaintiff's version of events such a termination is not what occurred and would not have been warranted. First, under Plaintiff's version of the facts, his behavior did not justify his seizure and immediate removal from his room without notice or process. *Cf. United States v. Rambo,* 789 F.2d 1289, 1291-1292 (8th Cir. 1986) (defendant who was high on drugs was lawfully arrested for disorderly conduct under the state undesirable guest statute after other guests reported to hotel management that defendant was running naked through the halls and screaming and police officers heard screaming from defendant's room). Second, while the parties dispute the tone and tenor of the interaction between Plaintiff and the front desk clerk, it is undisputed that Plaintiff ultimately paid the contested rate and returned to his room where, by all accounts, he went quietly about his business. It is therefore reasonable to conclude that once Plaintiff left the front desk, he no longer created a disturbance or posed a threat, if in fact he had done those things during his interaction with the clerk. *Cf. Id.* at 1295 (arrest of hotel guest for disorderly conduct was proper where officers reasonably concluded defendant, who appeared to be high on drugs, would continue to commit a disturbance in the hotel and present a danger to himself). Finally, Plaintiff was not asked to leave the hotel--and therefore cannot be said to have refused to leave--until after the alleged Constitutional violation occurred. *Cf. Id.* at 1294 (defendant "unequivocally" refused to vacate the room when asked to do so and closed the door on authorities). Hence, Plaintiff had a continued property interest in his hotel room, with the corresponding Fourth Amendment protections, when Defendant arrived at his door.

Defendant alternatively argues that Plaintiff abandoned any expectation of privacy he had in the room when he "allowed" Defendant to enter the room. As discussed below in Section II, there exist genuine issues of material fact about whether Plaintiff did, in fact, consent to Defendant's entry into Plaintiff's room. Thus, the Court concludes that, for purposes of summary judgement, the Plaintiff did not voluntarily permit Defendant to enter his room and therefore cannot be said to have voluntarily surrendered his property right in it.

Defendant argues that even if his actions interfered with Plaintiff's possessory interest in the hotel room, the encounter was lawful because it was objectively reasonable under the circumstances. The Court must consider whether the entry, when viewed in the light most favorable to Plaintiff, was objectively reasonable. *See Camara v. Mun. Court of the City and County of San Francisco*, 387 U.S. 523, 539 (1967) ("reasonableness is still the ultimate standard under the Fourth Amendment"). In conducting a reasonableness analysis, which involves the careful balancing of governmental and private interests, the Court must pay careful attention to the facts and circumstances surrounding the conduct at issue. *See Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (the question for the Court is "whether the totality of the circumstances justifie[s] a particular sort of . . .seizure"). The reasonableness of the officer's conduct must be assessed "from the perspective of a reasonable officer on the scene" *Medina v. Cram*, 252 F.3d 1124 (10th Cir. 2001). Even law enforcement officers who reasonably believe, albeit mistakenly, that they are acting constitutionally are entitled to immunity. *Romero v. Fay*, 45 F. 3d 1472, 1476 (10th Cir. 1995).

These facts do not support a conclusion that Defendant acted reasonably under the circumstances. At the time of their encounter, Plaintiff's rights at issue here were clear enough that, under Plaintiff's version of the events, a reasonable officer would have understood that his or

11

her actions violated those rights. *See Saucier*, 533 U.S. at 201. The prohibition against a warrantless entry and seizure in a hotel room, absent exigency or consent, was clearly established at the time of Defendant's warrantless entry into Plaintiff's room. *See Stoner*, 376 U.S. at 486. Indeed, Defendant acknowledges that, based on the information he had when he went to Plaintiff's room, he could not have lawfully arrested Plaintiff. Once inside Plaintiff's room, Defendant saw that Plaintiff, unlike most hotel guests, was living there with all or most of his personal possessions. Defendant also learned of Plaintiff's grievance with the hotel over what Plaintiff alleged was a fraudulent rate. Defendant was thus was on notice that the situation was not a garden-variety dispute between a hotel and a disruptive over-night guest. During the encounter, Plaintiff was not belligerent or threatening, and Defendant could not have reasonably concluded that Plaintiff posed a threat to Defendant, to hotel staff or property, or to other hotel guests and their peaceful enjoyment of the premises. Defendant, however, was hostile and threatening. Therefore, Plaintiff's version of the facts preclude a determination that Defendant's actions were reasonable under the circumstances.

Because Plaintiff enjoyed a protected property interest in his room at the time of the encounter, and because the Court cannot conclude that Defendant acted reasonably under the circumstances, Defendant is not entitled to summary judgment as to Count I (Unlawful Seizure of Property) on the basis of qualified immunity.

## II.     Count II:  Unlawful Detention

Defendant contends that he is entitled to Summary Judgment as to Count II of Plaintiff's Complaint because the encounter between Plaintiff and Defendant was consensual and therefore does not implicate the Fourth Amendment. A search conducted pursuant to a valid consent is constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Similarly, a

consensual encounter does not constitute a "seizure" within the meaning of the Fourth Amendment because "[a] consensual encounter is simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official." *United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir.1990). The analysis of whether an encounter was consensual must include an examination of all of the circumstances surrounding it, including its location and duration, whether the officers touched or physically retrained the individual, whether officers were uniformed or in plain clothes, whether their weapons are displayed, and the number, demeanor, and tone of voice of the officers. *See Florida v. Bostick* 501 U.S. 429, 439 (1991); *United States v. Zapata*, 997 F.2d 751, 756-57 (10th Cir. 1993) (quotations, citations, and alteration omitted). While no single factor is dispositive, the strong presence of two or three factors may be sufficient to support a conclusion. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir.2006) (quotation omitted). Based on the evidence before it, the Court cannot conclude that Plaintiff's actions constituted voluntary cooperation in response to Defendant's non-coercive action, or that the encounter was consensual.

Defendant contends that after Plaintiff opened the door, Defendant walked into the room, taking the opened door as implicit permission to enter. It is undisputed that Defendant made no specific request to enter Plaintiff's room and Plaintiff did not explicitly invite Defendant to do so. The Supreme Court addressed an analogous situation in *Johnson v. United States*, 333 U.S. 10 (1948). Law enforcement officers, acting a tip from a confidential informant, followed an odor of opium to a hotel room occupied by unknown individuals. *Id.* at 12. The officers knocked on the hotel room door, and through the closed door, a voice asked who was there. *Id.* An officer replied, "Lieutenant Belland," and after a slight delay and some "shuffling or noise" in the room,

the defendant opened the door. *Id.* The officer said that he wanted to speak briefly with the defendant, and according to police, the defendant "stepped back acquiescently and admitted us." *Id.* The Court held that this entry, which was the beginning of the search and subsequent arrest, "was demanded under color of office" and "was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." *Id.* at 13. *See also United States v. Impink*, 728 F.2d 1228, 1233 n. 3 (9th Cir.1984) ("In most implied consent cases, the suspect himself takes some action that implies consent- he gestures to the police to enter, or assists in the search of others." (Internal citations omitted)). In the instant case, Plaintiff only opened the door a crack, a demonstration of his subjective expectation of privacy in his room. Moreover, Plaintiff stepped back into his room only to avoid being hit by the door being pushed open by Defendant, not as an acquiescent or welcoming gesture. From these actions, Defendant could not have reasonably inferred Plaintiff's voluntary consent to Defendant's entry.

Neither can the Court adopt Defendant's argument that consent was established by Plaintiff's failure to protest Defendant's entry into the room or ask Defendant to leave. Defendant did not inform Plaintiff that he could refuse Defendant entry into the room, and he was not required to give such an advisement. *See United States v. Gordon*, 173 F.3d 761, 765 (10th Cir.1999) (encounter does not become non-consensual simply because an officer fails to advise defendant that he is free to leave an encounter). An officer's failure to give an explicit advisement, however, is a factor to be considered in the totality of the circumstances. *See United States v. Spence*, 397 F.3d 1280, 1284 (internal citation omitted). In this case, Plaintiff did not have the opportunity to block Defendant's entrance to the room because he had to move to avoid being hit by the door when Defendant pushed it open, and Plaintiff could not later close the door

14

because Defendant was standing with his back to the door precisely to prevent Plaintiff from closing it. Furthermore, not only was there no advisement, but Defendant explicitly said Plaintiff was not free to disobey Defendant's orders or remain in the hotel room. Consequently, a reasonable person in Plaintiff's position would have understood from Defendant's actions and statements he was not "free to decline" Defendant's orders "or otherwise terminate the encounter." *See Bostick*, 501 U.S. at 439.

Defendant further contends that Plaintiff's act of beginning to pack his personal belongings constituted to consent.[10] The Court cannot infer consent from this action. Compliance with a police demand is not consent. *See Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968) (the burden of establishing that consent was freely and voluntarily given "cannot be discharged by showing no more than acquiescence to a claim of lawful authority"); *see also United States v. Leary* 846 F.2d 592 (10th Cir. 1988) (applying the *Bumper* holding to a commercial setting). Moreover, while Plaintiff complied with Defendant's orders, he explicitly protested them.[11] Defendant responded to Plaintiff's protest by indicating that he would not tolerate disobedience.

While there is no evidence that Defendant displayed a weapon or handcuffs or physically retrained Plaintiff during the encounter, there is evidence that Defendant threatened to call for backup officers and arrest Plaintiff if necessary to prove his authority and effect the eviction.

---

[10] Defendant contends that his allegedly coercive comments, as well as comments about taking Plaintiff to jail and calling for back-up officers, were made only after Plaintiff had begun to comply with Defendant's orders to pack and vacate the room, and therefore have no bearing on the issue of consent. Under the circumstances, the discrepancy about what transpired between the two men before Plaintiff began to pack constitutes genuine issue of material fact.

[11] At what point Plaintiff began to voice his protests is a genuine issue of material fact.

Additionally, Defendant's alleged hostile manner and use of commanding language throughout the hour-long encounter is another factor that indicating that encounter was coercive rather than consensual. *See United States v. Elliott*, 107 F.3d 810, 814 (10th Cir.1997) (evidence that may establish a coercive show of authority includes, *inter alia*, the use of commanding language that indicates compliance is required).

Finally, the fact that Defendant acted at the hotel's request does not render the seizure consensual. It is well settled that a hotel proprietor cannot waive his or her guests' Fourth Amendment rights. *See Stoner v. California*, 376 U.S. 483, 489-90 (1964). Therefore, the hotel's consent, absent Plaintiff's consent, cannot render the encounter consensual.

The evidence before the Court raises numerous disputed issues of material fact regarding the events that occurred during the encounter at issue. If the jury believes Defendant's testimony that Plaintiff consented to the encounter, it could decide that Defendant properly entered Plaintiff's room and did not detain him in violation of his Fourth Amendment rights. The Court cannot conclude on the evidence before it that Plaintiff consented to the encounter, or that he freely chose to comply Defendant's orders. Plaintiff's version of events indicate that his compliance with Defendant's orders amounted to orderly submission to a law enforcement officer who, in effect, represented to the defendant that he had the authority to enter the room, against Plaintiff's will if necessary, and arrest him for noncompliance. Accordingly, as to Count II (Unlawful Detention), Defendant is not entitled to summary judgement on the basis that his encounter with Plaintiff was consensual.

16

## **CONCLUSION**

**IT IS THEREFORE ORDERED** John Skinner's Motion for Summary Judgment **[Doc. No. 36]** is DENIED.

Dated this 6th day of July 2006.

_____
MARTHA VÁZQUEZ
CHIEF U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Adam Baker
Mary Han


Attorney for Defendant:
Catherine Arlowe
Kathryn Levy
David Bruce Nava